Good morning, Your Honors. May it please the Court. My name is Dan Hill. I represent Appellant Anton Paul Drago, and I'm going to watch the clock and save about three minutes for rebuttal if I may. Your Honors, I'm going to narrow this case down for discussion to the two issues regarding the continuation of trial and the attempt to stop and restart trial on day four by Defense counsel. What this boils down to, I know the government wants to frame this issue as a Strickland issue, and I'm going to urge the Court to consider the district court's analysis within the mistrial framework, and whether or not he abused his discretion in kind of two ways. Number one, by ignoring that analysis. There wasn't any discussion on that day four sidebar of whether there was a necessity for a mistrial or not. The district court's I'm sorry, counsel. I must have read about a different case. I thought that the district judge thought that this was the continuation motion was made to delay. It was not necessary. It was no legitimate basis for it. So here's how the motion to continue and the motion for mistrial made on day four of trial interplay in a couple of ways. Number one, the district court was well on notice based upon the motion to continue that at least in his opinion at the time that he thought I may not be prepared by the time of trial. So that's the Do you have any case that says that an attorney, speaking of his own ability, can on literally in trial, basically, on the eve of trial, say, you know, I don't know if I'm going to do a very good job here. I think we need a continuance. In the context of the motion to continue? Yes. I don't, Your Honor. And here's how that plays into what happened on day four of trial. When Paul Drago urges this Court to consider, given the overwhelming fumbling of trial counsel in dealing with the evidence and addressing the issues before the district court, just goes into play that he was even unable to properly write a motion to continue. I mean, my day job is as a trial lawyer, Your Honor, and I can't say I've ever seen an equivocal motion to continue. You're doing a pretty good job, though, as an appellate lawyer, because most of the trial lawyers go like this, raise their arm, and they pretend like we're a jury. We're not. I understand that, Your Honor. I'll tone down the dramatics. So he was — the Court was on notice. For the purposes of our discussion, at the very least, the motion to continue put the district court on notice. I don't think I'm ready for this thing. Now, had I written it, of course, it would have been, I'm sure, as Your Honors are used to seeing, I am not ready for trial. Here are the specific items that need to be done before trial. So now, leading on to Day 4 of trial, what I outlined in the reply brief on Days 1, 2, 3, and 4 was, I mean, it was a kind of a keystone cop situation on the defense side of the table. We had, on at least three occasions, an admission on the record, I don't have, and the government is moving in its key pieces of evidence, and from the defense side of the table, I don't have that. I haven't seen that. And one of the key e-mails between the charge — the uncharged co-conspirator in this trial, co-conspirator pled out, e-mail between one of the victims and the co-conspirator, he conceded, I just got this this morning, Your Honor. You know, can I — give me a minute here. I'm going to take a look at it. So this is what's happening, exhibit after exhibit after exhibit, before this defense attorney, who, bless his heart, finally calls Judge Mahan aside at sidebar and says, Judge, I have no idea what I'm doing. I haven't read any of these exhibits. He indicates pretty clearly he was relying on Mr. Drago for trial preparation. He says, you know, I was told certain things. The evidence is now coming in and directly contradicting that. And for all of his faults, which has been discussed at length in the briefing, did come forward at that time in front of the district court to say, this has to be put to a stop. I have no idea what I'm doing. I haven't read these exhibits. Of course, he said, I haven't been paid. When Judge Mahan — I'm troubled by what you just said. You said the reason he gave for not having addressed those exhibits and so forth is that his client had given him a totally different account of what the facts were. Doesn't he have a right, if not an obligation, to rely on what his client tells him? I think just the opposite. When — So we should do away with the attorney-client privilege because we don't want clients to tell the truth to their lawyers. No, of course not, Your Honor. But there's a — there's a duty on an officer of the court and as an advocate who is going to be confronting the government exhibits. And ostensibly, his job is to cross-examine, to attack the credibility and attempt to undermine the government's case as best he can. He's dealing with the tangible things that are coming in front of the jury and admitted by the district court. To the extent that knowledge of those exhibits might be — might correct the defendant's understanding or hopes or whether or not he'd even seen these trial exhibits, I can only assume that if defense counsel had not seen and was completely unprepared with these trial exhibits, that the defendant had not seen these trial exhibits. To the extent that the defendant has a misunderstanding. Now, certainly, I — we go and we listen to the defendant, and that's part of the investigative process of preparing a Federal defense of this magnitude. But you still have to look at the tangible things. You have to look at the documents, look at the evidence that's coming in. And we — there was definitely time in the reply brief we discussed part of the piece, and — so as a trial lawyer, you know, the other half is more or less as a pitchman, right? I'm a timeshare — But, counsel, with respect, I hear the government have been bringing in its witnesses, getting all ready. It's a two-part deal, you know. The government has to get ready, too. It was getting ready. There's some very serious charges against your client here. It's hard for me — I mean, you can see how a lawyer could game the system completely if we went along with what you said. And I really find some — I'm struggling with how your client was prejudiced. The evidence was absolutely overwhelming. You could have a really, really, really good lawyer, and I don't know what the lawyer could have done. So if — arguendo — if the evidence is overwhelming and highly prejudicial, and I think that your client would be convicted no matter how good the lawyer was, what do we do with this claim that you're making? So if it gets sent back down because the attorney wasn't ready, so it gets reversed for a — there was a necessity for a mistrial, the last few pages of the reply brief focus on the line of law coming from the Supreme Court that says a trial doesn't necessarily cure other defects. So just arguendo, what would I have done or potentially have done as trial counsel in this case? It's incumbent upon a trial attorney to know the evidence and exhibit so well that if there are hopes or expectations of victory from the defendant, in all candor, it's sometimes the trial lawyer's duty to disabuse the defendant of those notions and guide this towards negotiation. That may be, but — but you still have a situation that I'm trying to get you back to, is we have a number of instances where things aren't exactly done correctly. Like — and I know you don't want to talk about Strickland, but let's just say Strickland's got two parts, misconduct by the lawyer and prejudice. And what I'm failing to see here is prejudice, either in terms of the motion to bifurcate or in terms of the continuance. Where's the prejudice? So the prejudice, Your Honor, as the Supreme Court has said, attaches also not just to the trial. It's just well within the realm of plausibility, if not likely, that this case should have been aggressively negotiated. You can't negotiate a case if you don't even know the trial exhibits or the discovery. So I've never seen an argument that said, my client was so guilty that he had ineffective assistance of counsel because he was so guilty. I've not quite seen prejudice turned on its head. Usually, it's that I could have been shown to have not done this crime if I had had effective assistance of counsel. And your argument is, I was so guilty that I had ineffective assistance of counsel because I shouldn't have been tried. Is that essentially what you're arguing now? Well, obviously, no attorney wants to answer an unequivocal yes to that question, Your Honor. Right. However, there's a reason that the ineffective assistance of counsel claim attaches to the plea negotiation process. Now, as the appellate lawyer, you know, I'm tied to the record in this case. Yeah. I was even appointed for the purposes of the reply. When Your Honors see that literally boxes and boxes of evidence were being moved at one time, I can't stand before Your Honors and speak to what else was in the discovery, what impeachment materials were in the discovery. But does it matter? I mean, as Judge Schroeder suggests, I mean, the evidence against your client was overwhelming. A good lawyer could have impeached and impeached and impeached. And if you're convinced, as I am, based on what I've seen in the record, there wouldn't be any difference. You get down to the prejudice issue, and the prejudice issue says, you know, your client gets no relief because no prejudice was shown. Except you have an IAC claim, but that's different. I'm sorry, Your Honor. You may have an IAC claim. So I — in terms of — there is a minor interplay in terms — with the ineffective assistance of counsel in the following way, and that is, to the extent that the motion for mistrial touches upon trial counsel's unreadiness. This Court is disinclined to review such issues, although I still maintain that the Strickland analysis per se does not apply, if it's clear enough on the record. So what we have on the record is not only trial counsel's admission that he hadn't — not just not reviewed the discovery, but even the trial exhibits, which is — represents a small percentage of the universe of discovery in any case. He hadn't even looked at those, was unfamiliar with those. There's no conceivable way that an attorney could effectively negotiate, much less try a case, when we have on the record an unfamiliarity, even with the evidence the government intended to introduce at trial in front of the jury. You may, at some point, you may have a — your client may have a claim that he was offered something, and he should have, in the plea negotiations, should have taken it, and there was ineffective assistance of counsel. That can be brought collaterally. But here, this is — we have the record that we have. So — And appeal. So I'm not quite sure why we should go to possible ineffective assistance in pleas or in what he did, what he said at the trial. And I'm not asking Your Honors to reach ineffective assistance of counsel. But I'm asking — You're asking for an abuse of discretion holding and the failure to give a continuance? That's right. In the failure to — not only did he not fail to say there's a necessity to put a stop to this and declare a mistrial, the record is pretty clear he didn't even — he didn't go into that analysis. He says, you should have done it, you could have done it, but you didn't. So sit down and do your job, is what the district court said. There wasn't any analysis of, wait a minute, is there a need for a mistrial? That's not the analysis the judge entered into at that day 4 sidebar. It was only an admittedly somewhat well-deserved dressing down of counsel. Here's what you should have done. Here's what you could have done. But then it stopped. So motion denied. Take a seat. There wasn't any discussion. Here's what was done. And based upon what was done, is there a need for a mistrial? That analysis was not — Do you want to save any of your time for rebuttal? Yes, Your Honor. I'll keep that last time. Very good. Good morning. May it please the Court. Katie Bagley on behalf of the United States. I'd like to address a few points made by opposing counsel about the mistrial issue. Defense wants to say this is not a Strickland case, but is a — is a mistrial case analyzed under abuse of discretion. To determine whether a district court abused its discretion in granting or denying — I'm sorry, denying a mistrial, you look at the record before the district court at the time the motion was made. And at that point, defendant hasn't identified any error by counsel that's so egregious that it was manifestly necessary to stop the trial right then. He identifies a few instances of the attorney fumbling with exhibits, saying, I don't have it, which could also mean I don't have it in my hand, it's not showing up on my evidence screen, give me a second to find it. And those are all followed by Mr. O'Connell then indicating that he did not object to the admission of an exhibit or did object. And the one case where he says, it's something I just got this morning, what he actually says is, I need a moment to look at it, I think that's something we just got this morning, which suggests a familiarity with that particular exhibit, that he'd seen it. And then there was some discussion about the screens. There were some technical issues in this trial. The issues relating to impeachment don't show what the defendant wants them to show. So one is the example of an e-mail that he contends should have been used to impeach one victim, Bill McKelvey. That e-mail was an e-mail from Mara Pesce to co-conspirator Joseph Rizzutti. Defense counsel had already impeached Mara Pesce with that exact e-mail during her testimony. So whatever reason he had for not impeaching Joseph or not impeaching McKelvey with it, it wasn't because he hadn't seen it. McKelvey didn't write the e-mail. He didn't deny having seen the e-mail. Defense counsel might have just thought it wasn't worth it. Sotomayor, I take it that if we were to affirm this and he, his attorney were then to go back through all of this material that was there that the then-attorney said he hadn't gone through yet, and was to go back and talk to people about what happened in the plea, possible plea negotiations, and bring a habeas petition on the ground that he got ineffective assistance of counsel, he could do that. That's absolutely. And I think bringing up the plea issue indicates why this is really an ineffective assistance of counsel claim. It's also worth noting the defendant had three different attorneys during the course of the trial, and the pretrial period lasted two years. The idea that there were no plea negotiations conducted is absurd on its face. In order to know why the defendant pleaded did not plead guilty, we'd have to have some evidence and testimony from the attorneys who represented him. And that's best done in a 2255. I think it's also, maybe as a legal point, that Strickland still provides the framework for analyzing the mistrial. And as noted, the defendant does not show prejudice. His own attorney at trial said the evidence was damning. His counsel on appeal says it was so bad he should have pled guilty. This is not a case where the defense counsel's fumbling or lack of smoothness in the district court prejudiced him in any way. He lied. He lied to everybody. He lied to the VA. He committed perjury in front of the jury. There was no way he was not going to be convicted on this evidence. And I would also note that the district court never found that the defense attorney wasn't prepared. In fact, in denying the motion for the continuance, he specifically found that counsel had been diligent, had been preparing daily for weeks, and during the trial, at the moment of mistrial, he never said, you're not prepared too bad. He said, do your job. And the defense counsel went on to continue to represent Mr. Drago. If the court has no further questions, I'm happy to cede my time. All right. Very well. Thank you. Counsel, you have a little time left. We'll round it up to two minutes. But I hope you will address the point that, as far as the government is concerned, what happened that you said occurred didn't happen. It was quite different. You had other lawyers involved. There likely were plea negotiations, and that this is simply not an accurate portrayal of what the district court was dealing with. I'm sorry. What was not an accurate report? You know, this lawyer had no experience, no background, wasn't doing anything. Indeed, there were other lawyers who had been involved in the case. I think a total of three lawyers altogether. So this seems to fit into the same pattern. Not you, but this is your client's approach. He just tells whatever he thinks people want to hear. It's not necessarily true. And it sounds like what happened at the trial court is quite different than he told you what happened. Well, I, to be perfectly candid with the court, of course, only prepared these materials based upon what was evident in front of the court. Did you believe your client? I'm not going to answer that, Judge. So his first attorney, the Federal Public Defender, was dispatched well, well in advance of trial. His second attorney died. And then this third attorney, the Wills Trust and Estate attorney out of Oregon, in terms of I disagree with the government that there was a finding by the district court judge that he was prepared for trial. And I think that is abundantly clear at sidebar in the district court and the government's trial government counsel's use of the subjunctive while at side. This is a you did have time. You could have done this. You should have done this. At no point in that sidebar on day four of trial did the district court judge say I find that you are ready and that, therefore, there is no necessity to bring an end to the trial. And it wasn't my client's. Didn't counsel himself say that he had been preparing two to five hours a day for a period of weeks? Two hours a day for a period of weeks. That's what he said for a I think there ended up being, you know, hundreds and hundreds and hundreds of exhibits. So he represented in his motion to continue, I don't think I'll be ready. Here's what I've been doing a couple hours a day. It's a rather radical step after that, in the middle of trial, in front of this district court in particular, to approach and say, I have no idea what I'm doing. I don't know these exhibits. There's things coming in. He says that sidebar. There are things coming in I haven't seen. We thank you for your presentation and in case the case just argued is submitted.
judges: Schroeder, M. Smith, Rakoff